# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **JAMES MYERS** | : | Case No. 3:20-cv-402 |
| 5901 Mondelet Court | : | |
| Dayton, OH 45429 | : | Judge: _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **COMPLAINT WITH JURY DEMAND** |
| **CITY OF CENTERVILLE** | : | **ENDORSED HEREON** |
| 100 West Spring Valley Road | : | |
| Centerville, OH 45458 | : | |
| | : | |
| and, | : | |
| | : | |
| **WAYNE DAVIS** | : | |
| **Individually and in his Official Capacity** | : | |
| 100 West Spring Valley Road | : | |
| Centerville, OH 45458 | : | |
| | : | |
| and, | : | |
| | : | |
| **MATTHEW BROWN** | : | |
| **CENTERVILLE POLICE CHIEF** | : | |
| **Individually and in his Official Capacity** | : | |
| 100 West Spring Valley Road | : | |
| Centerville, OH 45458 | : | |
| | : | |
| Defendants. | : | |

This action for damages and injunctive relief arises from Defendants' acts of unlawful violation of James Myers' right of free speech as protected by the First Amendment to the United States Constitution and retaliation in the exercise thereof, unlawful retaliation against him for reporting violations of law, retaliation for having discharged his public duties, tortious interference with his business and professional relationships and defamation.

## PARTIES

1. Plaintiff James Myers is a 44-year old individual residing in Montgomery County, State of Ohio and a former Police Sergeant and 25-year employee at Defendant City of Centerville whose entire professional career has been in law enforcement.

2. Defendant City of Centerville is a municipal corporation located in Montgomery County, Ohio

3. At all times relevant herein Defendant Wayne Davis is the City Manager of the City of Centerville, who was acting individually and/or in his official capacity.

4. At all times relevant herein Defendant Matthew Brown served as Police Lieutenant or Chief of Police of the City of Centerville who was acting individually and/or in his official capacity.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1331 because it arises under the laws of the United States 42 U.S.C. § 1983. The Court also has jurisdiction over Myers' pendent statutory and common law state law claims under 28 U.S.C §1367.

6. The Court has personal jurisdiction over the Defendants, who reside in, and conduct business in this district. Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred within this Division and District and the unlawful conduct alleged in this Complaint has taken place within this Division and District.

## FACTUAL ALLEGATIONS

*Myers' Employment History*

7. Plaintiff James Myers was hired by the Centerville Police Department on September 12, 1994 as a Police Cadet.

8. Myers served as Cadet until December 23, 1996 when he was promoted to the position of Police Officer.

9. From 1996 through 2001, Myers worked as a patrol officer and evidence technician.

10. In 2001, Myers was transferred into the Criminal Investigations Section as a Detective, and served as the Juvenile Detective, Victim/Witness Advocate and Capias Officer from 2001 until 2006.

11. From 2006 to 2011, Myers was rotated back to street patrol as an officer, due to the department's rotation policy related to career development.

12. Myers was promoted to the position of Sergeant in August 2011, and served in the position of Road Patrol Sergeant until January 2015.

13. In 2015, Myers became Staff Sergeant and worked in that capacity from January 2015 until May 2016.

14. In May 2016, Myers was assigned to the position of Detective Sergeant to oversee the Criminal Investigation Section where he served until his termination.

15. During his employment, Myers received no significant discipline for conduct other than reprimands for minor issues, including damaging a cruiser and missing a meeting.

16. Until he received a five-day suspension in June 2019, Myers was never counseled or disciplined for disparaging the City or Police Department, nor was he ever counseled or disciplined for undermining the chain of command.

17. In 2019, the Sergeants Bargaining Unit was recognized within the City and Myers served as the representative for that Bargaining Unit under the Collective Bargaining Agreement. The Agreement was reached on or around September 2019.

*Protected Activity*

18. In October 2015, Myers became aware of actions and behavior of a supervisor that were serious enough to bring these concerns to the attention of then-Lieutenant Matt Brown and Chief Robertson. These actions included, but were not limited to, the supervisor's creation, possession and possible dissemination of sexually explicit photos of minors, using the personal smartphone of the supervisor. Myers was informed by a Centerville police officer that they observed the supervisor using his personal cell phone to take photos and/or videos of minors in a state of nudity and/or engaged in sexually explicit activity, from the personal cell phones of the minors, who were being investigated as part of a "sexting" complaint at Centerville High School. Myers also learned that the supervisor disseminated the images and videos of the minors by uploading them to a computer database shared by sworn police officers and non-sworn civilians, allowing unauthorized personnel to view the photos and/or videos.

19. In September 2016, Myers became aware of actions and behavior of the same supervisor that again involved possible criminal conduct. These actions included, the supervisor using kerosene to burn suit pants at a vacant residence; in direct violation of the City of Centerville Municipal Code 660.08.

20. In December 2016, when Myers discovered that no Internal Affairs investigation of the September 2016 incident or his previous complaint of serious misconduct and possible criminal activity from October 2015 had commenced; Myers expressed to Chief Robertson his concern that it appeared that Command Officers were above the law.

21. Within a few days, an Internal Affairs investigation into only the open burn incident was opened in late December 2016, which ultimately resulted in the involved supervisor receiving an oral reprimand for a violation of the City's ordinance against open burning.

22. In April 2016, Chief Robertson summoned Myers into his office and showed him an anonymous letter which had been sent to Chief Robertson's home.  The letter alleged that the involved supervisor had kept evidence from "sexting" cases in his office or takes it home for "review."  Chief Robertson accused Myers of writing the letter, which Myers refuted and reiterated his concerns about the supervisor's peculiar, abhorrent and possibly criminal behavior.  Chief Robertson assured Myers that an internal investigation would be completed.

23. By August 2016, Myers learned that the concerns about the involved supervisor, brought to the Lieutenant's and Chief's attention in October 2015 and again in April 2016, were never investigated or addressed by a proper Internal Affairs investigation.  Several of the concerns Myers shared with Chief Robertson and then Lieutenant Brown, including the creation, possession and possible dissemination of child pornography by the involved supervisor were never addressed and were ignored.

24. On or about January 22, 2018, Myers sent an email to then Human Resources Manager Jennifer Wilder, asking to convene a meeting of the Employee Relations Committee (ERC), regarding potential discipline of Officer Adam Bennett.  Myers was the Sergeants representative on the ERC committee.

25. Thereafter Lieutenant Brown contacted Myers to advise him that the Sergeants' concerns about Bennett were not an ERC matter.  However, a meeting was scheduled for January 25, 2018 with then-Lieutenant Brown, to discuss the Sergeants' concerns related to the potential discipline of Officer Adam Bennett.

26.  Also, on January 22, 2018, Myers advised Wilder that he had concerns regarding criminal activity by Chief Robertson and a supervisor.  Myers requested that he receive protection as a whistleblower.  On January 24, 2018, Myers met with City Manager Davis and

5

HR Manager Wilder to discuss his concerns about possible criminal activity on the part of former Chief Bruce Robertson, as well as the involved supervisor. Specifically, his concerns regarding Chief Robertson related to theft in office and dereliction of duty and the concerns about the involved supervisor related to the creation, possession and possible distribution of child pornography.

27. On January 26, 2018, Myers put his concerns in writing, specifically asking for whistleblower protection under Ohio law.

28. On January 31, 2018, Myers met with Attorney Tom Schiff, who had been retained by the City Manager to possibly investigate the allegations raised by Myers. Mr. Schiff that was a private attorney, former prosecutor and a friend of City Manager Davis.

29. On February 6, 2018, upon considering the information provided by Myers, Schiff indicated that due to the severity of the concerns related to the actions of the supervisor, they would have to be investigated by an outside law enforcement agency. Schiff told Myers he agreed to investigate Myers' theft in office concerns relating to Chief Robertson, at the request of City Manager Davis.

30. Upon learning of Schiff's investigation, Chief Robertson abruptly retired from the Centerville Police Department on February 9, 2018. Lieutenant Brown was appointed to the position of interim Police Chief.

31. On February 23, 2018, Schiff's investigation concluded that Chief Robertson had not engaged in any criminal activity. The case was never reviewed by a prosecutor before Schiff reached this determination on his own. Schiff provided a written report to the City of Centerville regarding his investigation. Myers was never notified by Schiff or City Manager Davis regarding

the outcome of his complaint and learned of the outcome through a press release issued to the Dayton Daily News.

33. On or about March 15, 2018, Schiff directed Myers to meet with an investigator from the Kettering Police Department (KPD) regarding his concerns related to the involved supervisor. Myers discussed his concerns relative to the supervisor and was told that the Kettering Police Department would conduct a full investigation. Myers later learned that the investigation resulted in no criminal charges being filed.

33. In May 2018, Myers was notified that he was selected to attend the FBI National Academy, after being nominated in 2011 and remaining on a waiting list for nearly seven years.

34. Admission to the prestigious FBI National Academy is the result of a highly selective process, and attendance would have significantly enhanced Myers' professional and career opportunities.

*Retaliation*

35. Upon his application to be considered for the open position of Chief of Police, in late May, 2018, Myers was notified that he was selected as one of the five final candidates for the position of Chief of Police and that a telephone interview would be conducted.

36. On July 14, 2018, Myers participated in a 30-minute telephone interview before a panel that included Davis and the involved supervisor. Upon conclusion of the interview, Myers was told the remaining five candidates would be reduced to three candidates and in-person interviews would be scheduled. Myers felt it was highly unethical and improper for City Manager Davis to allow the involved supervisor to be on his selection panel considering the allegations raised against the supervisor.

37. On July 20, 2018, Myers learned from a patrol officer that he had not been selected for the Chief position, after a department wide text message was sent to everyone except Myers. An hour later Myers received an email notifying him of his non-selection.

38. On August 1, 2018, upon the request of City Manager Davis, Myers met with him and Chief Brown to initially discuss his concerns about the Chief selection process. The discussion later turned to discuss Officer Bennett's pending discipline, and investigations of former Chief Robertson and the involved supervisor. Myers legally made an audio recording of this meeting.

39. During the August 1, 2018 meeting, City Manager Davis told Myers that "full on" investigations were conducted into the allegations against former Chief Robertson and the involved supervisor. When Myers confronts City Manager Davis and Chief Brown about the findings of the investigations, he is advised that no criminal wrongdoing was found after being reviewed by "multiple prosecutors." Myers challenged Chief Brown to identify the prosecutors who reviewed the case(s) and Chief Brown did not answer.

40. During the August 1, 2018 meeting, Myers provided additional information to Chief Brown about the involved supervisor reportedly receiving a massage from a local woman whom Myers had previously reported as possibly being involved in prostitution. Chief Brown advised Myers that he would investigate the matter.

41. On May 8, 2020, subsequent to a public records request made to the City of Centerville, it was learned that no record of the involved supervisor's alleged misconduct related to the allegations of creation, possession and/or distribution of child pornography were contained within the supervisor's official personnel file.

42. On August 16, 2018, Myers and two other Sergeants applied for one open position of Police Lieutenant.

*Protected Free Speech*

43. On October 1, 2018, Myers learned that a long-time Centerville Public Works Department employee with whom he was familiar had been fired by the City. That employee contacted Myers and requested a character letter in support. Myers had not been involved in any investigation of the circumstances leading to the employee's termination.

44. On October 2, 2018, Myers prepared a letter for the employee on his own time and at his residence. Myers later learned the letter was indirectly provided to the City Manager by the employee's attorney.

45. On November 6, 2018, Myers was summoned to meet with HR Manager, Jennifer Brumby and Attorney Joseph Scholler regarding the statements contained in Myers' letter of support for the Public Works employee. Mr. Scholler, a private attorney, had been retained by the City of Centerville as labor counsel. At that meeting, Myers was not told that he had done anything wrong or that the contents of the letter were disparaging to the City.

46. On November 8, 2018, the City entered into a mediation agreement with the Public Works employee, agreeing unlawfully and contrary to the R.C. §124.384, to pay him $68,000 (including an overpayment of accrued sick leave) to forego the appeal of his termination and enter into a non-disclosure agreement.

47. On December 28, 2018, Myers was called to the involved supervisor's office and informed that he was being brought up on internal charges in connection with his character letter for the Public Works employee. The supervisor refused to disclose what rules or policies Myers allegedly violated despite Myers asking repeatedly. Myers stated that he would not participate in

an interview without a representative present.  Myers once again felt it was highly unethical or improper for Chief Brown to assign this supervisor to investigate him considering Myers sought whistleblower protection against this individual.  Myers also felt that he was being retaliated against for his whistleblower complaint, as well as his involvement with organizing the Sergeant's collective bargaining unit and the character letter he provided to the public works employee.  The internal interview was rescheduled for January 4, 2019.

48. On January 4, 2019, Lt. Lavigne interviewed Myers, without providing him with a Notice of Administrative Rights and told him that he potentially violated several City and Departmental rules by writing the letter.  At that time, Myers was also told that one of the charges was insubordination because Myers had allegedly been told in the past not to intervene with the investigation or disciplinary matters of other employees.

### *Further Retaliation*

49. On October 3, 2018, Myers learned that he was not selected for the Lieutenant position which was given to Sergeant Tyler Wilson.  Chief Brown then informed Myers that another Lieutenant's position was being created and that position was being awarded to Sergeant Mike Yoder.  Chief Brown admitted that Myers was the most qualified candidate but that other factors were considered.  Chief Brown did not elaborate on the "other factors" when asked by Myers.

50. On October 17, 2018 the Sergeants, through Myers, filed for collective bargaining through the State Employment Relations Board requesting representation by the Ohio Patrolman's Benevolent Association.

51. By the end of October 2018, Myers learned that no Internal Affairs investigation had been opened into the allegation that the involved supervisor had reportedly consorted with a possible prostitute under the guise of a massage.

52. As of February 1, 2019, prior to the completion of any investigation regarding the character letter, Myers' annual evaluation and merit-based longevity payment were withheld and Myers was informed that it would not occur until the outcome of the investigation was known.

53. As of February 5, 2019, the Internal Affairs investigation had not been completed within 30-days, absent written permission from the Chief of Police for an extension. This is a violation of Departmental policy contained in General Order 52.2.3 of the Centerville Police Department Policy Manual.

54. On February 20, 2019, Chief Brown prepared a memo claiming that Myers had been warned not to intervene or interfere with investigations or disciplinary matters of other City employees during the recorded meeting on August 1, 2018.

55. On March 4, 2019, at a pre-disciplinary conference Myers denied and refuted the allegations that he had been so warned.

56. On May 24, 2019, Assistant City Manager, Mariah Butler-Vogelgesang prepared a misleading and erroneous report recommending that the charges against Myers be sustained.

57. On June 5, 2019, City Manager Wayne Davis issued a five-day suspension without pay to Myers for allegedly being insubordinate and for criticism of the City.

58. On June 10, 2019, Myers filed a Notice of Appeal with the City's Personnel Appeals Board and was told by the involved supervisor that his five-day suspension would be held in abeyance until the outcome of the appeal.

59. On June 26, 2019, Myers submitted a memo to Lt. Lavigne requesting his annual evaluation be completed and his merit-based longevity payment be provided to him, considering his previously pending discipline had been decided.

60. On July 2, 2019, Myers is provided with his annual evaluation, however Lt. Lavigne recommends that Myers merit-based longevity payment be denied. Chief Brown concurs with this decision.

61. Contrary to the previous representation, Myers was scheduled to begin his five-day suspension on July 5, 2019.

62. In September 2019, Chief Brown wrote a letter of recommendation for Myers to attend the FBI National Academy.

63. In November 2019, the FBI notified Myers that his admittance to the FBI National Academy had been rescinded after the background investigator's discussion with the Lt. Lavigne. Myers confronted Lt. Lavigne and was told that he was given a favorable recommendation to attend the FBI National Academy.

64. In late November 2019, the existence of an audio recording of the August 1, 2018 meeting was disclosed to the City. Myers was placed on paid administrative leave on December 2, 2019.

65. On December 6, 2019 and December 17, 2019 Myers attended two formal internal affairs interviews relating to Myers' alleged failure to disclose the existence of the audio recording.

66. During the December 17, 2019 internal affairs interview, Myers self-reported that he had stopped into the police building on December 15, 2020 to complete his payroll documentation, and to preserve evidence related to a criminal investigation.

67. On January 6, 2020, Myers attended a third formal internal investigation interview relating to Myers entry to the police building on December 15, 2019. No discipline or other action occurred as a result of that internal investigation interview, however it was apparent that the City was looking for any other evidence of misconduct as a pretext for this interview, as the City conducted a search of Myers' work computer despite the fact that the original investigation did not involve Myers' work computer.

68. As of February 19, 2020, Myers and his counsel discovered that there was no formal report relating to any investigation of the involved supervisor with respect to the child pornography allegations nor former Chief Robertson's dereliction of duty. Furthermore, it was learned that the City of Kettering never conducted a formal investigation or reviewed the case with a prosecutor.

69. On March 16, 2020, City Manager Wayne Davis terminated Myers' employment from the City of Centerville for alleged misconduct involving purported dishonesty related to withholding of the audio recording.

70. On May 5, 2020, the City, through its Communications Director, Kate Bostdorff, further retaliated against Myers by submitting a press release regarding Myers that was factually inaccurate, prejudicial, defamatory, and retaliatory. The press release was subsequently restated almost verbatim in the Dayton Daily News as submitted by former Reporter, Wayne Baker.

71. On May 6, 2020, after the City of Centerville once denied Myers application for unemployment benefits, the State of Ohio issued a reconsideration of its previous order denying those benefits and approved those benefits. In their ruling the State of Ohio indicated that Myers' employment was terminated without just cause.

72. On May 8, 2020, subsequent to a public records request made to the City of Centerville, it was learned that no record of the involved supervisor's alleged misconduct related to the allegations of creation, possession and/or distribution of child pornography were contained within the supervisor's official personnel file.

73. On June 10, 2020, the Personnel Appeals Board met to render its approval of Myers' five-day suspension.  Immediately following the issuance of the Personnel Appeal Board's decision, the City further retaliated against Myers and issued a press release in which Chief Brown falsely and publicly stated, "we cannot and will not tolerate any sort of bigotry or those who support it," falsely stating both expressly, and by implication, that Myers was a bigot or had been accused of any actions constituting bigotry.

74. On August 4, 2020, after a public records request made to the City of Centerville, it was learned that no record of former Chief Robertson's alleged misconduct related to theft in office or dereliction of duty were contained within his official personnel file.

## FIRST CLAIM FOR RELIEF

### (Freedom of Speech/First Amendment)

75. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

76. Myers was a public employee who engaged in protected activity by authoring a letter of public concern in support of a coworker that Defendants deemed critical of the City. In response, Defendants took multiple adverse and retaliatory actions against Myers, as described in the facts stated above.

77. Defendants violated Myers' right of free speech, which is protected under the First Amendment to the United States Constitution, by imposing a 5-day suspension, and other

adverse and retaliatory actions, as described in the facts stated above as a penalty for writing the letter in support of a former City employee.

## SECOND CLAIM FOR RELIEF

### (Retaliation-Violation of R.C §4113.52)

78. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

79. In the course of his employment, Myers brought to the attention of Defendants that two fellow employees engaged in potential criminal conduct. Rather than investigate the alleged conduct, Defendants took adverse and retaliatory actions against Myers by denying him promotions, withholding his evaluation and pay increases, subjecting him to unwarranted disciplinary action, and defaming his professional and personal reputation.

## THIRD CLAIM FOR RELIEF

### (Civil Action for Danages for Criminal Act-- R.C. §§2921.03, 2921.04, 2921.05, 2921. 13, 2921.15, 2921.32 and 2307.60)

80. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

81. R.C. Chapter 2921 prohibits conduct, as stated above, and actions of retaliation, intimidation, false allegations, false allegations, and obstruction of justice in a civil action.

82. R.C. 2307.60 authorizes anyone injured in person or property by a criminal act may recover full damages.

83. In the course of his employment, as a public servant, Myers brought to the attention of Defendants that two fellow employees engaged in potential criminal conduct. Rather than investigate the alleged conduct, Defendants retaliated against Myers by denying him

promotions, withholding his evaluation and pay increases, subjecting him to unwarranted disciplinary action, and defaming his professional and personal reputation.

84. Defendants' unlawful actions, by and through its employees, toward Myers were extreme and outrageous, and intentionally or recklessly caused him severe emotional distress after committing over twenty-five years of his life working for the City.

85. Defendants acted willfully and maliciously with spite and ill will, and with a reckless disregard for Myers' legal rights.

86. As a direct and proximate result of Defendants' actions, Myers suffered damages and is entitled to judgment.

## FOURTH CLAIM FOR RELIEF

### (Tortious Interference with Business Relations)

87. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

88. Defendants were aware that Myers had been accepted and was planning to attend the FBI Academy to further his law enforcement training.

89. Defendants intentionally interfered with Myers' relationship with the FBI, proximately resulting in the rescission of his acceptance into the FBI Academy, preventing Myers from a participating in what would have been beneficial personal and professional training.

## FIFTH CLAIM FOR RELIEF

### (Defamation)

90. Plaintiff incorporates herein as if fully rewritten the foregoing allegations in this Complaint.

16

91. Defendants made public statements and statements to third parties regarding Myers' performance of his professional duties and his character that were false and constitute defamation.

92. Defendants acted willfully and maliciously with spite and ill will, and with a reckless disregard for Myers' legal rights.

93. As a direct and proximate result of Defendants' actions, Myers suffered damages and is entitled to judgment.

## SIXTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

94. Plaintiff incorporates herein as if fully rewritten the foregoing allegations in this Complaint.

95. Defendants' unlawful actions, by and through its employees, toward Myers were extreme and outrageous, and intentionally or recklessly caused him severe emotional distress after committing over twenty-five years of his life working for the City.

96. Defendants acted willfully and maliciously with spite and ill will, and with a reckless disregard for Myers' legal rights.

97. As a direct and proximate result of Defendants' actions, Myers suffered damages and is entitled to judgment.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

    (a) That Defendant be enjoined from further unlawful conduct as described in the Complaint;

    (b) That Plaintiff be reinstated;

(c) That Plaintiff be awarded all lost earnings, compensation and benefits;

(d) That Plaintiff be awarded compensatory damages, including emotional distress;

(e) That Plaintiff be awarded liquidated damages;

(f) That Plaintiff be awarded punitive damages;

(g) That Plaintiff be awarded prejudgment interest;

(h) That Plaintiff be awarded reasonable attorneys' fees and costs;

(i) That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than his compensation over several, separate tax years; and

(j) That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

Respectfully submitted,

/s/ Jeffrey M. Silverstein
Jeffrey M. Silverstein (0016948)
FREKING MYERS & REUL LLC
One Elizabeth Place, Suite 220
Dayton, OH  45417
PH: 937/228-3731 - FX: 513/651-2570
*jsilverstein@fmr.law*

Katherine Daughtrey Neff (0082245)
FREKING MYERS & REUL LLC
600 Vine Street, 9th Floor
Cincinnati, OH 45202
PH: 513/721-1985 - FX: 513/651-2570
*kneff@fmr.law*

Trial Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all matters so triable.

/s/ Jeffrey M. Silverstein